## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| VICKI KINDEM,<br><br>Plaintiff,<br>v.<br>MENARD, INC.,<br><br>Defendant. | Civil No. 14-1226 (JRT/HB)<br><br>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

J D Haas, **J D HAAS & ASSOCIATES PLLC**, 9801 Dupont Avenue South, Suite 430, Bloomington, MN 55431, for plaintiff.

Steven E. Tomsche, **TOMSCHE, SONNESYN & TOMSCHE**, 610 Ottawa Avenue North, Minneapolis, MN 55422, for defendant.

Plaintiff Vicki Kindem brings this negligence action against defendant Menard, Inc. ("Menard") after she slipped and fell in the checkout area of a Menards[1] store in Richfield, Minnesota, seriously injuring her elbow. Menard removed the action to federal court and moved for summary judgment. This matter is now before the Court on Menard's motion. Viewing the facts in the light most favorable to Kindem, as the non-moving party, the Court concludes that a reasonable jury could return a verdict in Kindem's favor based on the factual record. Therefore, the Court will deny Menard's motion for summary judgment.

---

[1] Menards is a store chain owned by defendant Menard.

# BACKGROUND

## I. KINDEM'S FALL

On December 23, 2013, Kindem slipped and fell at a Menards store, injuring her shoulder and elbow. Kindem is sixty-two years old. (Aff. of Steven E. Tomsche ("First Tomsche Aff."), Ex. A (Dep. of Vicki Kindem ("Kindem Dep.")) at 7:3-4,[2] Apr. 30, 2015, Docket No. 21.) On December 23, Kindem was shopping for a Christmas gift at the Richfield Menards when she slipped and fell in front of a Coke refrigerator near the cash registers, injuring her elbow. (*Id.* at 38:7, 74:9-12, 75:5-8, 78:22-80:1, 91:14-15, Ex. 6.)

The floor in the area where Kindem fell is concrete. (*Id.* at 83:11-14; Aff. of Earl "Doc" Smith ("Smith Aff."), Ex. A at 3-5, May 14, 2015, Docket No. 24.) When asked at her deposition how she fell – whether she slipped or tripped – Kindem responded that she believes she "slipped," with her right foot sliding on a slippery substance. (Kindem Dep. at 90:2-25.) Although she "thought there was water on the floor," (*id.* at 83:24), Kindem does not specifically recall seeing a wet substance on the floor prior to or following her accident, (*id.* at 84:11-85:25). She also did not see any other "dangerous condition on the floor" before or after she fell. (*Id.* at 84:25-85:2.) The parking lot was slushy that day, though, and Kindem assumed that customers had tracked water into the store from the parking lot, in part because she saw a store employee holding a mop nearby after her fall. (*Id.* at 75:10-22, 86:5-25.) Kindem concedes, however, that she

---

[2] Kindem deposition references use internal pagination.

does not specifically have "any information or evidence, or whatever, that Menards was aware of any kind of a condition, or a dangerous condition at the time of [her] fall." (*Id.* at 86:1-5.)

As a result of the fall, Kindem injured both her left shoulder and her left elbow. "[T]he major injury was the elbow," (*id.* at 38:7), which was "shattered," (*id.* at 40:8). During therapy for her elbow, Kindem further discovered that her shoulder had also been injured in the fall. (*Id.* at 37:19-25.) She did a series of exercises for two months that fully alleviated her shoulder problems. (*Id.* at 39:3-24.) The elbow was more complicated, requiring Kindem to undergo an elbow replacement, with several titanium pins inserted to enable her arm to bend. (*Id.* at 40:24-41:11.) As a consequence of the elbow replacement, she can no longer play golf or open certain kinds of cans. (*Id.* at 43:18-44:16.) She is limited in her ability to pick up dishes or her dog, use an ATM, or sleep in certain positions. (*Id.* at 44:9-14, 47:21-24, 51:16-53:3.) One of her greatest frustrations has been her inability to pick up her grandson and care for him. (*Id.* at 66:5-69:5.) Kindem also worked for Compass Airlines and retired after the incident, receiving early Social Security benefits. (*Id.* at 58:9-59:19.) She filed this claim against Menard on April 22, 2014. On April 30, 2015, Menard moved for summary judgment. This matter is now before the Court on Menard's motion.

## II.   DYNAMIC COEFFICIENT OF FRICTION SLIP TESTING

To support her negligence claim, Kindem retained Earl "Doc" Smith as an expert on commercial flooring. Smith has a civil engineering degree from Purdue University

and has owned a construction and engineering firm since 1996. (Smith Aff. ¶ 2.) For his work on this case, Smith reviewed surveillance tapes from the Richfield Menards store and hired Braun Intertec Corporation to conduct a test known as the Dynamic Coefficient of Friction ("DCOF") Slip Test on several areas in the store. (*Id.*, Ex. A (April 3, 2015 Report of Earl Smith ("Smith Report")) at 1.)

The National Floor Safety Institution ("NFSI") has set a national standard for DCOF values on hard surface floors. Based on the NFSI's standards, a DCOF value above 0.42 indicates a "high" slip resistance floor with a lower probability of slipping. (*Id.* at 3.) A DCOF value between 0.30 and 0.42 indicates an "acceptable" slip resistance potential. (*Id.*) A DCOF value below 0.30 indicates a "low" slip resistance potential with a higher probability of slipping. (*Id.*) Braun Intertec tested three areas of the Richfield Menards store: in front of the Coke refrigerator where Kindem fell, in front of Checkout Aisle 3, and in front of an aisle end cap. (*Id.* at 2.) Based on those tests, they concluded that the area where Kindem fell had a DCOF value of 0.36 ("acceptable" range), Checkout Aisle 3 had a DCOF value of 0.26 ("low" range), and the aisle end cap had a DCOF value of 0.24 ("low" range). (*Id.* at 2, 5.)

Smith explains in his report that concrete is porous and when used as a flooring material it can absorb liquids. (*Id.* at 3.) He concluded that "[i]n front of the drinking machine, pop, water, and other liquids soak into that area more often than just the cleaning that causes the concrete to be less slippery." (*Id.* at 4.) Smith's report analogizes much of the Menards floor to "a person walking on a very slippery surface (icy surface) and then that person walks onto a less slippery surface [like the floor near

the Coke refrigerator] with no visual signs.  There is a likelihood that that person will fall." (*Id.*)  Smith notes that this phenomenon "happens many times in the winter in a reverse situation when people are walking on a sidewalk and hit[] black ice causing them to fall because they are unaware of the hazard." (*Id.*)  His final conclusion was that "Kindem walking in the Menards Store should have an expectation that the surfaces that she is walking on are similar and in this case where she fell the surface friction changed causing the accident." (*Id.*)

The report does not discuss Kindem's account of her fall.  The report does mention the surveillance tape footage, though, as Smith notes that "in that video there was a gentleman with a shopping cart, that didn't fall, but appears that the floor stopped his cadence causing him to move several steps to the right to catch his balance." (*Id.* at 1.)  This occurred in the same location as Kindem's fall, around the same time that Kindem fell.  Menard explained during oral argument that Kindem had been provided the surveillance footage from the date of her fall.  From this footage and Kindem's fall, Smith concludes that "it appears there was something on the floor that was different in front of the drinking machine causing a change in walking pattern." (*Id.*)

## DISCUSSION

I.   **STANDARD OF REVIEW**

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit,

and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.   ADMISSIBILITY OF EXPERT EVIDENCE

Menard's motion for summary judgment relies in part on the argument that the Court should disregard the testimony of Kindem's expert, Earl Smith. Evidence offered to support a motion for summary judgment must be evidence that would be admissible at trial. *Hopkins by LaFontaine v. Empire Fire & Marine Ins. Co.*, 474 N.W.2d 209, 212 (Minn. Ct. App. 1991). Menard maintains that because Smith's testimony would not be admissible at trial, the Court should not consider the evidence now at the summary judgment stage of the litigation.

A court may exclude an expert's opinion from consideration at the summary judgment stage for failure to satisfy the requirements of Rule 702. *See Peitzmeier v. Hennessey Indus., Inc.*, 97 F.3d 293, 297-99 (8th Cir. 1996). Under Federal Rule of Evidence 702, expert testimony must satisfy three prerequisites to be admitted:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder

of fact accepts it as true, it provides the assistance the finder of fact requires . . . .

*Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citations and internal quotation marks omitted).  The district court has a gatekeeping obligation to make certain that all testimony admitted under Rule 702 satisfies these prerequisites and that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the expert is qualified, that his methodology is scientifically valid, and that "the reasoning or methodology in question is applied properly to the facts in issue." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006).

Menard challenges the admissibility of Smith's proposed testimony under Rule 702 and *Daubert* on two grounds.  First, Menard contends that Kindem's expert ignores the evidence in this case by proposing a theory that contradicts Kindem's deposition testimony – specifically, that she believed she fell due to something slippery being on the floor.  Second, Menard argues that Smith's test of the floor's slipperiness was unreliable because Smith conducted the test more than a year after the accident.  Menard contends that because Kindem's expert evidence is not consistent with the facts of the case, and because the evidence is based on a DCOF slip test conducted significantly after the accident, the evidence does not comport with Rule 702 and should not be considered for purposes of this summary judgment motion.

The Court finds Smith's testimony permissible under Rule 702. First, although the expert evidence provided by Earl "Doc" Smith does not align perfectly with Kindem's description of her accident from her deposition, the Court does not find that Smith's conclusion is contrary to the "facts" of the case in a way that makes it unreliable. The opinion of the plaintiff as to what caused her fall is certainly relevant, but it does not "establish the 'actual facts' of the case." *Tyler ex rel. Tyler v. Harper*, No. 08-617, 2010 WL 1408963, at *9 (D. Minn. Mar. 31, 2010) (declining to characterize one expert's opinion as the "actual facts" of the case when evaluating whether a second expert's testimony was contrary to the facts of the case). Rather, Smith's testimony would potentially be contrary to the facts of the case if his conclusions and the physical evidence in the case were discordant, or if his proposed testimony did not account for accepted facts. *See, e.g.*, *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055-57 (8th Cir. 2000) (omitting an expert's testimony for being contrary to the facts of the case where his economic model, although peer reviewed and accepted as a method, failed to account for certain aspects of the relevant economic market and trended toward "mere speculation" (internal quotation marks omitted)). Although Smith's report does not match Kindem's recalled account of exactly what caused the fall, his conclusion is entirely consistent with the results of the DCOF Slip Test he ran. Further, both Kindem and Smith contend that the fall occurred because of a change in the condition of the floor in front of the Coke refrigerator. That their descriptions of the nature of the change differ does not make Smith's evidence contrary to the facts of this case.

Second, although Smith's test was conducted more than a year after the accident, the Court finds the principles and methods of the test adequate under Rule 702. An expert's opinion is admissible, even when substantial time has passed between the accident and the expert's examination, "if the condition of the item being tested has not substantially changed since the time of the incident at issue." *Flagg v. Fairview Ridges Hosp.*, No. C2-98-1959, 1999 WL 326184, at *3 (Minn. Ct. App. May 25, 1999). In *Bohach v. Thomson*, 239 N.W.2d 764 (Minn. 1976), the Minnesota Supreme Court addressed this very issue when an expert sought to testify about coefficient of friction testing in an automobile accident case. In *Bohach*, the defendants retained an expert to perform coefficient of friction testing on the highway where the accident took place. *Id.* at 766. The expert did not conduct the testing until three years after the accident. *Id.* The court ruled that the testimony was appropriate, however, because no evidence had been presented "that the condition of the highway had changed in any significant way from the time of the accident." *Id.* at 767.

Regardless of the time elapsed between the accident and the coefficient of friction testing, courts look for evidence in the record of significant changes to the tested surface. With this in mind, the Court finds no indication that Smith's testing was unreliable. Here, as in *Bohach*, there is no evidence that the condition of the flooring had significantly changed since the accident. In fact, Smith spoke with the Richfield Menards manager when he performed the DCOF Slip Test and was told that the Coke refrigerator had been in that location for at least two years. (Smith Report at 3.) Absent from Smith's report or Menard's evidence is any indication that the Richfield Menards floor

has undergone substantial changes or alterations. Consequently, the Court will not preclude consideration of Smith's evidence merely due to the passage of time between Kindem's fall and Smith's DCOF Slip Test one year later.

While a jury may choose to place less weight on Smith's testimony in light of its inconsistencies with Kindem's own account of the fall, this is not a reason to omit Smith's evidence under Rule 702. The credibility of both Kindem's and Smith's accounts are matters best suited for a jury determination. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (internal quotation marks omitted)) Thus, the Court will consider Smith's evidence in evaluating Menard's motion for summary judgment.

## III.  NEGLIGENCE

Menard maintains that Kindem is not able to prove the elements of her negligence[3] claim based on the record in this case. To succeed on a claim for negligence under Minnesota law, Kindem must prove (1) that Menard had a legal duty of care; (2) that

---

[3] Menard also argues that there is no independent cause of action for "failure to maintain a safe environment" under Minnesota law and seeks summary judgment to the extent Kindem's complaint alleges there is one. (Notice of Removal, Ex. A (Summons & Compl. ("Compl.") at 3, Apr. 22, 2014, Docket No. 1.) The only mention of maintaining a safe environment in the complaint is Kindem's allegation that Menard "had a duty of care to maintain a safe environment for their customers; [Menard] was negligent and did not provide a safe environment for their customers." (*Id.*) The Court does not read this allegation as attempting to state a separate cause of action for "failure to maintain a safe environment." Rather, the Court construes Kindem's complaint as alleging a straightforward negligence claim, with maintaining a safe environment representing Menard's "duty" to Kindem. Therefore, the Court will treat Kindem's complaint as solely alleging a common law negligence claim.

Menard breached that duty; (3) that the breach of that duty was the proximate cause of Kindem's harm; and (4) damages. *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820-21 (8th Cir. 2010); *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011).

### A. Duty

Menard first argues that summary judgment is proper because Kindem has failed to establish that Menard owed Kindem a duty. The Court concludes that Kindem has established Menard owed her a duty. "It is well established under Minnesota law that a 'shopkeeper is not an insurer of the safety of business invitees, but he owes those expressly or impliedly invited upon his premises the duty to keep and maintain his premises in a reasonably safe condition.'" *Petrosian v. Costco Wholesale Corp.*, No. 03-3101, 2004 WL 1941276, at *2 (D. Minn. Aug. 31, 2004) (quoting *Wolvert v. Gustafson*, 146 N.W.2d 172, 173 (Minn. 1966)); *Do v. Wal-Mart Stores*, 162 F.3d 1010, 1012 (8th Cir. 1998). A storeowner has "an affirmative duty to protect [invitees] not only from dangers known to defendant but also from those which with reasonable care it might discover." *Smith v. Kahler Corp.*, 211 N.W.2d 146, 151 (Minn. 1973). There is no dispute that Menard was a storeowner and Kindem was a customer and, therefore, an invitee. Accordingly, the Court finds that Kindem has presented sufficient evidence that Menard owed her a duty of care.

### B. Breach

The fundamental dispute in this case is whether Menard breached the duty it owed to Kindem. Under Minnesota law, "[t]o recover in a slip-and-fall case, the plaintiff must

establish that the business operator had actual knowledge of the defect causing the injury or that it had existed for a sufficient period of time to charge the operator with constructive notice of its presence." *Do*, 162 F.3d at 1012 (internal quotation marks omitted). If the shopkeeper knew or should have known of the danger, then it "is negligent 'if its employees failed to rectify the dangerous condition after they knew, or in the exercise of reasonable care should have known, that the condition existed.'" *Smith v. Target Corp.*, No. A10-831, 2011 WL 206163, at *1 (Minn. Ct. App. Jan. 25, 2011) (quoting *Messner v. Red Owl Stores*, 57 N.W.2d 659, 661 (Minn. 1953)).

Menard argues that there is no evidence that it created or knew about the alleged dangerous condition of the floor. Further, Menard maintains that Kindem's evidence as to the cause of her fall is mere speculation. *Rinn v. Minn. State Agr. Soc'y*, 611 N.W.2d 361, 365 (Minn. Ct. App. 2000) ("[S]peculation as to who caused the dangerous condition, or how long it existed, warrants judgment for the landowner."); *Grant v. J.C. Penney Corp.*, No. 02-4343, 2003 WL 22996915, at *3 (D. Minn. Dec. 18, 2003) ("Speculation as to the cause or duration of the dangerous condition is insufficient evidence of negligence to withstand summary judgment."). Menard points out that Kindem does not know what caused her to fall – at her deposition, she repeatedly described her fall as "slipping," which she assumed was on water but did not remember specifically seeing water on the floor before or after she fell. When directly asked whether she had noticed a dangerous condition on the floor before her fall or had any evidence that a Menards employee knew about a dangerous condition on the floor, she conceded that she did not.

The Court concludes, however, that Menard is not entitled to summary judgment merely because Kindem presents alternative theories for her injury. Menard too narrowly views the scope of the alleged breach in this case and too tightly constricts the scope of relevant evidence. Kindem's allegations are not limited to whether any water was on the Menards floor for an appreciable amount of time. Kindem's negligence claim is founded on the contention that the floors at the Richfield Menards were in a dangerous condition that were likely to cause a customer to fall. There are several ways in which a jury could find the floors were dangerous. Kindem's account that she slipped and fell – possibly on water tracked in from the slushy parking lot – is simply one version of events that a jury may consider.

Based on Kindem's account, the breach by Menard would be a failure to keep the floors dry so that customers did not slip. The Court finds that there is sufficient evidence from which a jury could conclude that Menard breached its duty in this manner. Kindem recalls feeling something slippery on the ground, such as water, and then remembers her foot sliding out from beneath her. Menard argues that a party's "belief" that something occurred or existed is not sufficient to establish a genuine issue of material fact. *See Flagg*, 1999 WL 326184, at *1-*2. But Kindem's recollection is not purely an unsubstantiated belief.[4] The parking lot was slushy that day and customers were tracking

---

[4] The court affirmed dismissal of the plaintiff's claim in *Flagg*, but *Flagg* is distinguishable from this case in an important respect. The plaintiff in that case maintained that there must have been "some imperceptible water or liquid spots" on the floor where she fell. *Flagg*, 1999 WL 326184, at *1. Unlike Kindem, who identified a slushy parking lot and a Menards employee with a mop as clues that there may well have been liquid on the floor, the

(Footnote continued on next page.)

in water on their shoes – a fact Menard does not appear to dispute. Along with the fact that Kindem saw a Menard employee shortly after her fall standing nearby with a mop, it is plausible that the jury could find Kindem slipped on water on the floor.

Additionally, Menard's own surveillance footage shows another customer losing his footing in the same location as Kindem. If the jury chooses to credit Kindem's testimony and these facts rather than Smith's DCOF Slip Test conclusions, the Court finds that there is adequate evidence from which a reasonable jury could find Menard should have known (or, indeed, based on the surveillance footage and the employee with the mop, perhaps even actually knew) of the slippery floor and was negligent for failing to keep the floor dry. *See, e.g.*, *Chatfield v. Walgreen Co.*, No. 07-1172, 2008 WL 3200649, at *2 (D. Minn. Aug. 5, 2008) (permitting a negligence claim to proceed beyond summary judgment, even in the absence of direct evidence as to how long the dangerous condition had been present or that the defendant knew of the condition, where circumstantial evidence would permit a jury to find the defendant acted negligently).

Alternatively, a reasonable jury could place great stock in Smith's testimony and conclude that Menard was negligent for maintaining floors with dramatically different DCOF values. Smith presents an explanation for the different DCOF values – namely,

_____
(Footnote continued.)

plaintiff in *Flagg* had no reason to believe liquid may have been on the ground, yet she grounded her claim in the theory that the wet floor was an obvious danger of which the defendant should have been aware. *Id.* The court concluded that if the liquid was "imperceptible," the defendant necessarily could not have known about it and therefore would not be liable for failing to clean up the liquid. *Id.* In this case, the Court concludes that a jury could find that there was noticeable water in that location, based on the weather conditions and the Menards employee standing by to mop up a perceived liquid.

spillage from drinks at the Coke machine soaking into the porous concrete floor and creating a less slippery surface where Kindem fell.  This, too, is not mere conjecture.  Smith offers an explanation, based on extensive experience in the field, as to how different DCOF values might have caused a person to fall when moving from the slipperier surface of the rest of the store to the area near the Coke refrigerator.  Because Smith describes the process of liquid changing a surface by soaking into porous concrete as a phenomenon developing over time, it is plausible that a jury could conclude the floor had been in the same state long enough that Menard should have known of the floor's condition.  This theory is not defeated simply because Kindem's recollection of this startling event – that she slipped on water or slush tracked in from the parking lot – does not square with Smith's explanation – that she fell because the floor was abnormally slippery elsewhere and abnormally tacky in the spot where Kindem fell, as a jury is free to place greater value on certain testimony and pieces of evidence.

Viewing the facts in a light most favorable to Kindem, the Court finds that genuine issues of material fact remain with respect to Kindem's negligence claim.  A reasonable jury could conclude, on the basis of the evidence presented to the Court, that Menard acted negligently in the maintenance of its floors.  Accordingly, the Court will deny Menard's motion for summary judgment.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment [Docket No. 18] is **DENIED**.

DATED: September 2, 2015             _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                                    Chief Judge
                                       United States District Court